[Crim. No. 12006.   In Bank.   Apr. 24, 1969.]

In re EDWARD LOUIS ARGUELLO on Habeas Corpus.

Paul N. Halvonik, Gary D. Berger, Jerome B. Falk, Jr., Charles Stephen Ralston, Anthony G. Amsterdam, Richard Bancroft, Roy Eisenhardt, Jack Greenberg, Leroy D. Clark, Marshall W. Krause, Garfield Stewart, Harry J. Kreamer, Thomas Whelan and Nathaniel Colley for Petitioner.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, and Derald E. Granberg, Deputy Attorney General, for Respondent.

BURKE, J.—Counsel for Edward Louis Arguello petitions for a writ of habeas corpus in which he raises the same contentions presented in *In re Anderson* and *Saterfield*, 69 Cal. 2d 613 [73 Cal.Rptr. 21, 447 P.2d 117]. We have concluded that Arguello's claim that error under *Witherspoon* v. *Illinois*, 391 U.S. 510 [20 L.Ed.2d 776, 88 S.Ct. 1770], compels setting aside the death penalty must be upheld and that it is therefore necessary to remand him to the trial court for a new trial limited to the issue of penalty.

Arguello was found guilty by a jury of first degree murder and the penalty was fixed at death. On appeal, the judgment was reversed insofar as it related to penalty but affirmed in all other respects. (*People* v. *Arguello*, 61 Cal.2d 210 [37 Cal. Rptr. 601, 390 P.2d 377].) At the second penalty trial the death sentence was again imposed. On appeal we recalled the remittitur in *People* v. *Arguello, supra,* vacated our judgment, and reversed the judgment appealed from in its entirety. (*People* v. *Arguello*, 63 Cal.2d 556 [47 Cal. Rptr. 485, 407 P.2d 661].) A jury again found Arguello guilty of first degree murder and fixed the penalty at death, and we affirmed the judgment. (*People* v. *Arguello*, 65 Cal.2d 768 [56 Cal.Rptr. 274, 423 P.2d 202].)

At Arguello's last trial six prospective jurors and four prospective alternate jurors were excluded on the ground of their opposition to the death penalty. Most of them were excused on the court's own motion. Under *Witherspoon* v. *Illinois, supra,* 391 U.S. 510, it was improper to exclude one or more of the prospective jurors. For example, venireman Welsh stated that she did ''not believe in the death penalty'' and was thereupon excused. The court had not made it clear to her that opposition to the death penalty or conscientious scruples against that penalty would be insufficient to disqualify her from serving. This was understandable since the trial was long before the United States Supreme Court rendered its decision in *Witherspoon,* which sets forth new rules that the

states are required to follow and to apply retroactively (391 U.S. 510, 523, fn. 22 [20 L.Ed.2d 776, 785]).

██ The Attorney. General does not dispute that it was error under *Witherspoon* to exclude for cause venireman Welsh, but the Attorney General urges that we reconsider the conclusion in *Anderson* and *Saterfield, supra,* 69 Cal.2d 613, 618-620, that under *Witherspoon* such an error automatically requires reversal of the death sentence.

The Attorney General cites *Bell* v. *Patterson,* 402 F.2d 394, in which the court concluded that under the circumstances there appearing error under *Witherspoon* in excluding two veniremen did not deprive the defendant of an impartial jury and therefore did not require a reversal of the death sentence. Under the court's analysis of the record in that case, the merits of which need not concern us, the trial judge had the correct rule in mind but misapplied it, and the court emphasized that *Witherspoon* was distinguishable on its facts because there all the exclusions were the result of the intentional application of an improper standard. (See also *State* v. *Mathis,* 52 N.J. 238 [245 A.2d 20, 27].)

In the instant case, however, as in *Witherspoon* and in this court's *Anderson* and *Saterfield,. supra,* cases the error in excluding one or more veniremen appears to have been the result of the intentional application of the standard existing at the time of the trial as established by statute or decisions of this court interpreting a statute (see *Anderson* and *Saterfield, supra,* 69 Cal.2d 613, 618-619, and cases cited therein), which standard is not permissible according to *Witherspoon.* Under the broad language of *Witherspoon* there can be no doubt that in such a situation the error automatically requires reversal of the death sentence.[1]

---

[1] *Witherspoon* stated (391 U.S. 510, 521-523 [20 L.Ed.2d 776, 784-785]): "Specifically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its inflictions.[21] No defendant can constitutionally be put to death at the hands of a tribunal so selected," and footnote 21 read in part, "The most that can be demanded of a venireman in this regard is that he be willing to *consider* all of the penalties provided by state law, and that he not be irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings. If the *voir dire* testimony in a given case indicates that veniremen were excluded on any broader basis than this, the death sentence cannot be carried out even if applicable statutory or case law in the relevant jurisdiction would appear to support only a narrower ground of exclusion. . . ."

In contending that the error under *Witherspoon* does not require reversal the Attorney General also points to general principles such as that an accused is not entitled to a jury composed of any particular individuals (*People* v. *Abbott,* 47 Cal.2d 362, 372 [303 P.2d 730]), but these principles do not aid him because *Witherspoon* is controlling. The Attorney General further states that when the jury was accepted the prosecutor had 11 peremptory challenges remaining and Arguello had at least one. However, error under *Witherspoon* cannot be held nonprejudicial because of unused peremptory challenges of the defense (*Witherspoon* v. *Illinois, supra,* 391 U.S. 510, 523, 533 [20 L.Ed.2d 776, 785, 791] or of the prosecution (*Anderson* and *Saterfield, supra,* 69 Cal.2d 613, 619-620).

Arguello also contends: (1) the death penalty constitutes cruel and unusual punishment; (2) the administration of the death penalty in the absence of prescribed standards violates the due process and equal protection clauses of the United States Constitution; (3) he was denied his right to counsel during a period of several months after our denial of a rehearing on his last automatic appeal; (4) exclusion of veniremen opposed to capital punishment denied him his right to an unbiased jury representing a cross-section of the community at the *guilt* phase of the trial. He requests an evidentiary hearing "on the allegations of this petition."

The first three of the above contentions are settled by our decision in (*Anderson* and *Saterfield, supra,* 69 Cal.2d 613, and Arguello's request for an evidentiary hearing on those issues is denied for the same reasons we denied a like request in the last mentioned cases.

■ With respect to Arguello's claim that exclusion of veniremen opposed to capital punishment denied him his right to an unbiased jury representing a cross-section of the community at the *guilt* phase of the trial, in the absence of persuasive documentation we must agree with the United States Supreme Court that "We . . . cannot conclude, either on the basis of the record now before us or as a matter of judicial notice, that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction." (*Witherspoon* v. *Illinois, supra,* 391 U.S. 510, 517-518 [20 L.Ed.2d 776, 782]; see also *Anderson* and *Saterfield, supra,* 69 Cal.2d 613, 620-621; *People* v. *Gonzales,* 66 Cal.2d 482, 498-499 [58 Cal.Rptr. 361, 426 P.2d 929].) During the postconviction proceedings under review in *Witherspoon* no re-

quest was made to submit evidence on the matter. As previously stated, however, Arguello has made a request for an evidentiary hearing relating to his claim.

In *Anderson* and *Saterfield, supra,* 69 Cal.2d 613, 621, before *Witherspoon* we denied a similar request. After *Witherspoon,* the petitioners in *Anderson* and *Saterfield* again requested an evidentiary hearing and stated that they had arranged to have a described study made, that the study was not yet finished, and that preparation for the hearing would require at least several more months. We denied the request on the ground that the petitioners were then unready for an evidentiary hearing and that the type of study they had underway did not warrant what would amount to an indeterminate stay of the judicial process. The instant case differs from *Anderson* and *Saterfield* in that Arguello (1) does not state whether or not he is now prepared for an evidentiary hearing and (2) gives no indication of the nature of the evidence he intends to introduce. Under the circumstances here appearing an evidentiary hearing also is not warranted.

Under the compulsion of *Witherspoon* v. *Illinois, supra,* 391 U.S. 510, the writ is granted as to the penalty trial. The remittitur issued in Crim. 10129, *People* v. *Arguello,* is recalled and the judgment imposing the death penalty is reversed insofar as it relates to the penalty. In all other respects it is affirmed. Arguello is remanded to the custody of the San Diego County Superior Court for a new penalty trial.

Traynor, C. J., McComb, J., Peters J., Tobriner, J., Sullivan, J., and Herndon, J. pro tem.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.